1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLES MICHAEL HASSINGER,

        Petitioner,

  v.

DERREL ADAMS, Warden,
Substance Abuse and Treatment Center,
Corcoran, California,

        Respondent.

No. C 05-01011 WHA

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

In this habeas action from a state-court judgment, petitioner Charles Michael Hassinger alleges that California violated his federal rights to due process, to confront adverse witnesses, to a jury trial and to freedom from cruel and unusual punishment. He claims, in the alternative, that his trial counsel was ineffective. None of his claims warrants relief under the habeas statute, 28 U.S.C. 2254. His petition therefore is **DENIED**.

**STATEMENT**

Petitioner was convicted by a Santa Clara County Superior Court jury of six violations of California Penal Code Section 288(a), which prohibits lewd and lascivious acts on a person less than fourteen years old.

Petitioner was a tutor who helped children learn English as their second language. Students came to his house, one at a time. Three of his students, all girls, sat on his lap to read books while they visited him for their individual lessons. He used these opportunities to touch

**United States District Court**
For the Northern District of California

their vaginal areas with his hands.  One of the victims was six years old.  Two were eight.  Each was a recent immigrant.  Three of the Section 288(a) counts related to acts committed upon Y.S., who was eight years old.  Two were based on his actions toward Y., who was six.  One arose because of his behavior toward H.S.  This order refers to the victims by their initials only, to protect their privacy.

At trial, a woman testified that petitioner had molested her in 1986, when he was her second-grade teacher.  She could no longer remember the assault itself.  Mid-way through trial, the state disclosed that it had evidence that petitioner's computer may have been used to visit child pornography websites.  At that time, it also disclosed that it had evidence that someone had deleted many images from the computer's memory on the same day petitioner was first confronted with the allegations of molestation that led to the charged crimes.  The court allowed testimony based on this evidence, and expert testimony that child molesters often use child pornography.

The court sentenced petitioner to six consecutive sentences of 15 years to life in prison.  The state court of appeal affirmed his conviction.  The California Supreme Court denied his petition for direct review and denied, without opinion, his petition for a state writ of habeas corpus.

**ANALYSIS**

Persons in custody pursuant to a state judgment may be freed by writ of habeas corpus if they are held in violation of the Constitution, laws or treaties of the United States.  They must, however, exhaust their direct appeals in state court, or demonstrate that such appeals either are unavailable or ineffective.  The petitioner also must establish that, as to any claim decided on the merits, either (1) the state court decision was *contrary to* clearly established federal law, as determined by the Supreme Court, (2) involved an *unreasonable application of* clearly established federal law, as determined by the Supreme Court, or (3) was based on an *unreasonable determination of the facts* in light of the evidence presented in state court.  28 U.S.C. 2254(a), (b)(1), (d).

2

A state court's decision is "contrary to" federal law if it fails to apply the correct Supreme Court authority or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision.  A state court's decision involves an unreasonable application of federal law if it applies the governing Supreme Court rule to a new set of facts in a way that is objectively unreasonable, or if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams v. Taylor*, 529 U.S. 362, 405–12 (2000).  Determinations of factual issues by a state court must be presumed correct.  This presumption can be rebutted only by clear and convincing evidence produced by the applicant.  28 U.S.C. 2254(e)(1).

**1.     Evidence of Prior Sexual Offense.**

**A.     Petitioner's Claims.**

Petitioner claims that his confrontation-clause rights were violated when the trial court allowed testimony by L.C., a twenty-three-year-old woman who claimed that petitioner had molested her in 1986.  He also argues that admission of this evidence violated his due-process rights because it was propensity and bad-character evidence barred by long-standing historical practice.  Finally, he claims that the jury instructions on this evidence allowed conviction even if all elements of the crime were not proven beyond a reasonable doubt.

**B.     Relevant Facts**.

In 1989, a woman reported to police that someone inappropriately had touched the vagina of her seven-year-old daughter, L.C., three years earlier.  L.C. had not told her mother until 1989.  Police did not talk to L.C. then because her mother refused them permission, having promised her daughter that she would keep the assault a secret.  No charges were filed.

As investigators looked into the allegations that led to the instant case, they read the police report from 1989.  The prosecutor called L.C. to testify at petitioner's trial about the attack in 1986.  She was subject to cross-examination by defense counsel in a hearing outside the presence of the jury, at which the trial judge considered whether to allow her testimony before the finders of fact.  The judge allowed her to testify.  Defense counsel then cross-

examined her in front of the jury.  Next, Pamela S., Lindsay's mother, testified.  Defense

counsel declined the opportunity to cross-examine her.

The testimony of these women was admitted into evidence to prove petitioner's

propensity to commit sexual crimes against girls.  The trial judge told the jury that it could use

propensity evidence to convict petitioner.  The judge stated:

> Evidence has been introduced for the purpose of showing
> that the defendant engaged in a sexual offense other than
> that charged in this case.  "Sexual offense" means . . . any
> conduct made criminal by Penal Code 288(a). . . . If you
> find that the defendant committed a prior sexual offense,
> you may, but are not required to, infer that the defendant
> had a disposition to commit sexual offenses.  ¶  If you find
> that the defendant had this disposition, you may, but are not
> required to, infer that he was likely to commit and did
> commit the crimes of which he is accused.  ¶  However, if
> you find by a preponderance of the evidence that the
> defendant committed a prior sexual offense, that is not
> sufficient by itself to prove beyond a reasonable doubt that
> he committed the charged crimes.  ¶  The weight and
> significance of the evidence, if any, are for you to decide.

The judge repeatedly instructed the jury on the government's burden of proof to win a

conviction:

> "[T]he defendant may choose to rely . . . upon the failure,
> if any, of the People to *prove beyond a reasonable doubt*
> every essential element of the charge against him. . . . ¶
> A defendant in a criminal action is *presumed to be
> innocent* until the contrary is proved, and in case of a
> reasonable doubt whether his guilt is satisfactorily shown,
> he is entitled to a verdict of not guilty.  ¶  This
> presumption places upon the People the burden of proving
> him *guilty beyond a reasonable doubt.  ¶  Reasonable
> doubt* is defined as follows:  ¶  It is not a mere possible
> doubt, because everything relating to human affairs is
> open to some possible or imaginary doubt.  ¶  It is that
> state of the case which after the entire comparison and
> consideration of all of the evidence leaves the minds of the
> jurors in that condition that they cannot say they feel an
> abiding conviction of the truth of the charge. . . . . ¶
> [Y]ou are to *presume the defendant innocent*. . . . ¶  The
> People have the burden of proving *guilt beyond a
> reasonable doubt*. . . . ¶  In order to find the defendant
> guilty it is necessary for the prosecution to *prove beyond a
> reasonable doubt* the commission of a specific act or acts
> constituting that crime or all of the acts described by the
> alleged victim within the period alleged."

United States District Court

For the Northern District of California

The judge also admonished jurors to "not single out any particular sentence or any individual point or instruction and ignore the others" and to "[c]onsider the instructions as a whole and each in light of all the others."

### C.    Analysis — Confrontation Clause.

Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." This protection is applicable against the states. Even at its most stringent, the Confrontation Clause prohibits hearsay only if the person who made the out-of-court statement is not available for cross-examination. *Ohio v. Roberts*, 448 U.S. 56, 62 (1980); *Crawford v. Washington*, 541 U.S. 36, 59 & n.9 (2002); *Bockting v. Bayer*, 399 F.3d 1010, 1013 (9th Cir. 2005) (making *Crawford* retroactively applicable to cases on collateral review).

The state argues that petitioner defaulted this claim by not objecting to the evidence on confrontation-clause grounds at trial. Even if he did not, his claim fails. L.C. and Pamela S. were subject to cross-examination on the subject of their out-of-court statements. There was therefore no Confrontation Clause violation. Petitioner frivolously argues that the Confrontation Clause was violated because these two witnesses' testimony contained inadmissible hearsay. The Confrontation Clause has nothing to do with hearsay except when the out-of-court declarant is unavailable for cross-examination. Obviously, that was not the case here.[1]

### D.    Analysis — Use of Propensity Evidence.

Due Process protections are not limited to "the specific guarantees enumerated in the Bill of Rights." They also cover actions of the states that violate "fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the

---

[1] Because this order assumes, arguendo, that trial counsel made the appropriate objections, there is no need to consider petitioner's claim of ineffective assistance of counsel on this issue. Separately, petitioner asserts that, without the hearsay testimony about the assault on L.C., "there was insufficient evidence of this illegal molestation . . . and the jury should not have heard any of this story." This argument founders because the testimony was constitutionally proper. Because it was proper, counsel legitimately argued the "story" of the prior molestation to the jury.

United States District Court
For the Northern District of California

1   community's sense of fair play and decency."  This category is, however, very narrow.

2   *Dowling v. United States*, 493 U.S. 342, 352–53 (1990) (internal citations and quotation marks

3   omitted).  For such a violation to warrant relief in a 28 U.S.C. 2254 action, it must be consistent

4   with clearly established Supreme Court caselaw.

5       Petitioner does not cite any Supreme Court decision clearly establishing a due-process

6   rule barring admission of propensity evidence.  In fact, the Supreme Court said in *Estelle v.*

7   *McGuire*, 502 U.S. 62, 75 (1991) that it expressed "no opinion on whether a state law would

8   violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

9   propensity to commit a charged crime."  Thus, the only clearly established Supreme Court law

10  on this subject is that *there is no clearly established Supreme Court law on this subject*.

11      Petitioner cites *McKinney v. Rees*, 993 F.2d 1378, 1386 (9th Cir. 1993), in which the

12  Ninth Circuit held that California violated the Constitution when it convicted a man based in

13  part on bad-character evidence that was not probative of any element of the crime charged.

14  This holding came before Congress amended the habeas statute to allow relief only for

15  violations of "clearly established Federal law, as established by the Supreme Court of the

16  United States."  28 U.S.C. 2254(d)(1) (1996).  *McKinney* therefore does not hold that the

17  constitutional rule it applies is derived from clearly established federal law, as determined by

18  the Supreme Court.  There is good reason to believe it was not; *McKinney* did not cite to any

19  Supreme Court decision basing its holding on the Constitution.  Furthermore, the Ninth Circuit

20  later refused to extent *McKinney* to cover evidence of a propensity for committing *sexual*

21  offenses.  *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001), upheld the constitutionality of

22  propensity evidence in federal prosecutions for sexual offenses.  *LeMay* treated *McKinney* as

23  laying down a general rule to which there was an exception in sexual-offense cases.  *Id.* at 1025.

24      Petitioner also seeks support in *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir.

25  1997).  That decision, however, merely stated that Federal Rule of Evidence 404(b), a statutory

26  provision not applicable to petitioner's state-court trial, "precludes the admission of prior bad

27  act evidence offered only to show criminal propensity."  That rule does not apply in state-court

28  cases, so *Johnson* has no applicability here.  The same is true of *Old Chief v. United States*, 519

U.S. 172 (1997), which rests its propensity-evidence holding solely on Rules of Evidence 403 and 404(b).

Petitioner also invokes *Boyd v. United States*, 142 U.S. 450 (1892).  That decision held that it was error to admit evidence of uncharged robberies to prove a murder charge.  The decision covered a federal trial and made no mention of any constitutional rule, so it falls far short of establishing any clearly established constitutional rule applicable in a Section 2254 proceeding such as the instant one.

Petitioner cites *In re Winship*, 397 U.S. 358 (1970).  That decision set down the requirement that no person may be convicted except upon proof beyond a reasonable doubt of every element of the charged crime.  It had nothing to do either with the types of evidence that may be used as proof or with the sufficiency of any particular kind of evidence to support a verdict.  Petitioner's citation of *Winship* is therefore inapposite.

Petitioner argues that the admission into evidence of uncharged offenses "invites the jury to convict on the charged crime to avoid allowing the defendant to escape punishment on the prior crime."  The judge, however, commanded that the jury to convict only upon proof beyond a reasonable doubt of the charged crimes.  The jury is assumed to follow its instructions.  *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions").  Petitioner has not presented any reason to abandon that assumption in the instant case.

The Supreme Court has not clearly established that there is any federal constitutional rule barring introduction of evidence of a past sexual offenses as substantive proof of the charged crimes.  Petitioner's claim therefore fails.

### E.    Analysis — Jury Instruction

The Due Process Clause allows conviction only if the prosecution proves beyond a reasonable doubt every element of the charged crime.  This standard reduces the chance that an innocent person will be convicted.  *Winship,* 397 U.S. at 362, 364.  *Winship* does not require, however, that  every single fact that the jury relies upon to be proven to a reasonable doubt.

United States District Court
For the Northern District of California

1    Many facts not proven to that standard may, collectively, allow the jury to infer that an element

2    of the crime is proven beyond a reasonable doubt.  To enforce *Winship*'s rule, judges must

3    instruct juries that they cannot return a guilty verdict unless the government has carried this

4    burden.  *Cool v. United States,* 409 U.S. 100, 104 (1972).  A jury conviction based upon an

5    impermissibly low quantum of proof violates the Sixth Amendment jury trial.  *Sullivan v.*

6    *Louisiana*, 508 U.S. 275, 278 (1993).  A judge can violate a defendant's rights by giving an

7    instruction that undercuts the force of an otherwise proper beyond-a-reasonable-doubt

8    instruction.  *See, e.g.*, *Cool*, 409 U.S. at 102–103; *Sandstrom v. Montana*, 442 U.S. 510, 521

9    (1979).

10        When a jury instruction is susceptible to a reading that would render the verdict

11   unconstitutional and another that would generate a proper verdict, the reviewing court considers

12   the challenged instruction in light of the full jury charge and in the context of the entire trial.

13   *See Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973) (consider charge as whole); *United States*

14   *v. Park*, 421 U.S. 658, 675 (1975) (consider context of whole trial).  The court then must decide

15   whether there is a reasonable likelihood that the jury applied the challenged instruction in an

16   unconstitutional manner.  *McGuire*, 502 U.S. at 72.  A verdict remains valid if a jury instruction

17   only tangentially undercut a proper beyond-a-reasonable-doubt instruction.  *Naughten*, 414 U.S.

18   at 149–50.

19        Petitioner claims that the instruction transcribed above allowed the jury to convict him

20   despite having a reasonable doubt about his guilt.  He argues that the instructions allowing

21   conviction only upon proof beyond a reasonable doubt were so watered down by the mention of

22   the preponderance-of-the-evidence standard that the verdict was invalid.

23        Petitioner claims support from *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004).  In *Gibson*,

24   the Ninth Circuit affirmed a district court order granting a petition for a writ of habeas corpus to

25   a prisoner held pursuant to a state-court judgment.  The petitioner had been tried for battery and

26   sexual crimes against his wife.  The prosecutor had introduced evidence that Gibson had

27   committed prior, uncharged sexual offenses against her.  The jury had been instructed that it

28

could use the defendant's alleged propensity for sexual violence as proof of the charged crimes if the prior offense was proven by a preponderance of the evidence.  The Ninth Circuit held that the "interplay" of two instructions — one stating that the priors need only be proven by a preponderance of the evidence and the other stating that the priors could be used to prove guilt — created a Sixth Amendment violation by allowing the jury to "infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence."  *Gibson*, 387 F.3d at 814, 817–18, 822.

In response to criticisms like those voiced in *Gibson*, California revised its standard jury instructions to make clear that, even though the preponderance of the evidence standard applied to proving the prior incident, the charged crimes nevertheless must be proved beyond a reasonable doubt.  Those revised instructions were given in petitioner's case.  They stated:  "[I]f you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes."  Thus revised, the instructions made it sufficiently clear that guilt could not be based upon anything less than proof beyond a reasonable doubt.

Petitioner's argument that the instructions were constitutionally invalid depends upon an atomized reading of them.  Read in isolation, bits of the instructions may appear unconstitutional.  The Supreme Court, however, requires that the instructions be read as a whole and in the context of the trial.  *Naughten,* 414 U.S. at 146–47; *Park*, 421 U.S. at 675.  Considered holistically, the instructions at petitioner's trial did not relieve the jury of its duty to acquit him if his guilt were not proven beyond a reasonable doubt.  It was not reasonably likely that any juror understood the instructions to authorize conviction on a lower quantum of proof. *McGuire*, 502 U.S. at 72.  The trial court gave the reasonable-doubt instruction in the same breath as it described proper use of the preponderance-of-the-evidence standard.  It thus harmonized the two standards and made clear that the higher one applied to the guilt determination.

9

Petitioner also argues that the verdict is infirm because the jury may have found the accusation of the prior offense true beyond a reasonable doubt and then leapt from that conclusion directly to the guilty verdict on the charged offenses.  He argues that such a leap was authorized by the judge's instruction that the propensity evidence's "weight and significance of the evidence, if any, are for you [the jury] to decide."  At most, that instruction introduced ambiguity.  It therefore is subject to the *McGuire* rule that no ambiguity invalidates a verdict unless there was a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner.  *See* 502 U.S. at 72.  In the instant case, it is unlikely that the jury applied the instruction that way.  It would be illogical to conclude that the charged crimes were committed solely because petitioner committed a similar crime more than a decade earlier.  It therefore is not reasonably likely that he jury reached an illogical conclusion.

Petitioner also claims that the jury may have substituted proof of the prior offense for one of more elements of the current offense.  Such a substitution would be similarly illogical.  There is therefore no reasonably likelihood that the jury made it.

In its closing argument, the prosecution did not exploit whatever ambiguity may have existed in the propensity instructions.  The prosecutor addressed the testimony about the sexual offense in 1986 by stating, in part, "Does it prove the case?  No, it is a different burden . . . but you can use that."  Later, he said:  "Hold me to my burden of proving beyond a reasonable doubt the defendant's guilt as to the charges."  Still later, he stated:

> [T]he standard of proof that you use as to whether or not you are going to decide to use [L.C.'s] testimony to decide [if] the defendant has a predisposition is a preponderance of the evidence.  [T]hat is separate and apart from the decision that you have to make on the three little girls.  That burden is beyond a reasonable doubt.  ¶  If you decide that you believe that it is more likely than not that [L.C.] was molested by the defendant, you can determine the defendant had a predisposition to molest little girls.  ¶  And is that [the burden in] the case of the three little girls?  No, it is not.  You must find beyond a reasonable doubt.  Two separate burdens.

The trial court's instructions and the court of appeal's decision to uphold them did not violate any federal constitutional rule that was clearly established by the Supreme Court. Petitioner's rights were honored, despite any ambiguity in the instructions. He was not entitled to a perfect trial. He was entitled to a fair trial and that is what he got.[2]

For the reasons stated above, the preceding claims fail.

**2.      Evidence of Separate Molestations of Y.S.**

**A.      Petitioner's Claims.**

Petitioner argues that his due-process rights were violated as to three of the counts because there was insufficient evidence that he molested the victim, Y.S., on three separate occasions, as charged, or that he did so on the specific dates alleged in the charging instrument. He also argues, alternatively, that if trial counsel did not adequately object to introduction of certain evidence as hearsay, he provided ineffective assistance of counsel.

**B.      Relevant Facts.**

The first amended information alleged that petitioner molested Y.S. once between January 1, 2000, and January 31, 2001, once between February 1 and February 28, 2001, and once on March 8, 2001.

At trial, the following Y.S. testified as follows.

> Q: The times that you went there, did Michael touch you
> every time in the [crotch] areas that you described?
> A: I . . . I think so.

This exchange came during questioning focusing on how petitioner allegedly touched her, including where on her body. The questioning also addressed how often she had gone to petitioner's house. San Jose Police Officer Ron Ezell testified that Y.S. told him, through an interpreter, that petitioner had molested her three times on March 8, 2001, the day of the

---

[2] Petitioner also argues that the verdict must be overturned because the case purportedly was submitted on two alternate theories and because it cannot be determined upon which theory the jury convicted. This makes no sense. There was only one theory of liability in the instant case.

United States District Court
For the Northern District of California

interview and that it had happened during every tutoring session. Her mother testified that Y.S. was tutored by petitioner once per week from mid-October 2000 to early March 2001. Jurors heard a recording and received a transcript of another interview of the girl by police. In it, Y.S. said that every time she went to petitioner's house, he touched her vaginal area.

The state court of appeal interpreted Y.S.'s testimony to mean that she was touched in the vaginal area by petitioner every time she went to his house.

### C.    Analysis.

When reviewing a conviction to see if sufficient evidence supports it, a court cannot "ask itself whether *it* believes that the evidence at trial established guilt." It must ask instead "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The court must consider all of the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

Petitioner claims that Y.S.'s testimony was ambiguous as to whether he touched her during every tutoring session. He claims she may have meant that, every time he touched her, he touched her in the same location — not that he touched her during each of her visits. The state court of appeal held that Y.S.'s testimony was not ambiguous, and that it meant petitioner had touched her every time she went to his home. The state court of appeal's decision on an issue of fact such as this one can only be disturbed if it was unreasonable in light of the evidence. The state court of appeal reasonably construed Y.S.'s testimony. Its conclusion therefore cannot be disturbed.

Petitioner also argues that the other evidence was hearsay admitted in violation of the Confrontation Clause. He is incorrect. Each of the declarants was available for cross-examination at trial.

There was sufficient evidence to support the state courts' findings that petitioner molested Y.S. on at least three occasions. Because the proof suggested that she was molested every week from October 2000 through March 2001, there also was sufficient evidence that at

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

least one violation of Section 288(a) occurred against Y.S. during the periods alleged, *i.e.*, between January 1, 2000, and January 31, 2001, and between February 1 and February 28, 2001. Y.S. told police that she was molested on March 8, 2001. Petitioner is wrong that there was a variance between the pleading and the proof. All the allegations as to frequency and timing of the molestations of Y.S. were supported by evidence.

To prevail on the ineffective assistance of counsel claim, petitioner would have to demonstrate (1) that trial counsel's performance "fell below an objective standard of reasonableness," and (2) that "the deficient performance prejudiced the defense," such that the defendant did not have a fair and reliable trial. *Strickland v. Washington*, 466 U.S. 668, 686–89 (1984). He states that his counsel objected on state-law hearsay grounds to Officer Ezell's testimony about his conversation with Y.S. Petitioner points to nothing in the record suggesting that this objection was deficient. Nor does he give any reason why it was inadequate. There is therefore no reason to believe there was a constitutional violation. The Court will not go on a fishing expedition through the transcripts to see if it can do for petitioner his work of identifying errors. Petitioner also claims that trial counsel rendered poor performance by not adequately objecting to the videotape. Trial counsel wrote a ten-page motion in limine opposing introduction of the videotape on multiple grounds, including hearsay. Trial counsel's representation in this regard therefore was adequate.

For all the reasons above, this claim fails.

**3.      Evidence that Petitioner Molested Y.**

**A.      Petitioner's Claim.**

Petitioner argues that his due-process rights were violated as to two other counts because there was insufficient evidence that he molested the victim, Y. He says the insufficiency manifested itself in her identification of the defense trial counsel as her molester. Petitioner also claims that his Fifth and Sixth Amendment rights were violated because by a material variance between pleading and proof, in that he was charged with molestations during

13

United States District Court

For the Northern District of California

1  a four-month period but the proof did not ever specify when, during the two-year period

2  teaching Y., he molested her.

### B.      Relevant Facts.

The first amended complaint charged petitioner with molesting Y. on two occasions during the period November 1, 2000, to March 9, 2001.

At trial, the prosecutor asked Y. to identify her tutor.  First, she stated that she did not see him in the courtroom.  Immediately thereafter, she pointed in the general direction of the defense table.  Y. and the defense counsel later had the following exchange during cross-examination.

> Q:  Y., am I Mike?[3]
> A:  [Nods her head up and down]
> Q:  I am Mike, aren't I?
> A:  Yeah.
> Q:  And I was your tutor, wasn't I?
> A:  Yeah.
> Q:  And I touched you in a bad way, didn't I?
> A:  But it was OK.

At trial, Y.'s mother identified petitioner as Mike, the man who tutored her daughter.  She also testified that Y. told her that "Mike" had touched her on her sexual organ.  Also at trial, a videotaped interview of Y. was played for the jury.  In that interview, she said that "Michael" took off her panties "maybe about two times" when she went to his house for lessons.  She said he touched her on her "prio prio," a Japanese word for sexual organ.[4]  In her police interview and her testimony at trial, Y.'s descriptions of  "Michael" were consistent with those made by the other victims.  They all said that he taught them English individually in his house, that he

---

[3] Petitioner goes by his middle name, Michael, or by Mike.  At trial, defense counsel used the girl's entire first name.

[4] Japanese was the girl's native language.  This translation was provided by the interpreter during the interview.  It is consistent with petitioner's statement in his brief that Y. said, during this interview, that he had touched her pubic area.

United States District Court

For the Northern District of California

1    read books to them while seated in his lap, and that he had at least one dog and fish.  Each girl's

2    description of how he touched them was nearly identical to each other girl's description.

3        As to the timing of the molestations, the only evidence was testimony by Y.'s mother

4    that the tutoring began in March 1999 and continued into March 2001.

5        **C.    Analysis.**

6

7        As stated, when a reviewing court considers the sufficiency of evidence, it must uphold

8    the conviction if "any rational trier of fact could have found the essential elements of the crime

9    beyond a reasonable doubt" when considering the evidence "in the light most favorable to the

10   prosecution." *Jackson*, 443 U.S. at 318–19.

11       Viewing the evidence in the light most favorable to the prosecution, a rational jury could

12   have found it sufficient to believe petitioner guilty beyond a reasonable doubt.  A fair

13   interpretation of Y.'s testimony was that she was pointing to petitioner when asked to identify

14   the man who lewdly touched her.  It also would have been reasonable for the jury to disbelieve

15   her later statement that defense counsel was the perpetrator.  That testimony could be written

16   off as the confused statement of a young child communicating through an interpreter.  The

17   convictions were adequately supported by evidence.

18       In some cases, a verdict may be invalidated if the evidence at trial did not correspond to

19   the facts alleged in the charging instrument.  For such a variance between pleading and proof to

20   taint the result, it must be material.  It is *not* material when the "allegation and proof

21   substantially correspond, or where the variance was not of a character which could have misled

22   the defendant at the trial."  A variance is only fatal to the result if affects the "substantial rights

23   of the accused."  The purpose of this rule is "(1) that the accused shall be definitely informed as

24   to the charges against him, so that he may be enabled to present his defense and not be taken by

25   surprise by the evidence offered at the trial; and (2) that he may be protected against another

26   prosecution for the same offense."  *Berger v. United States*, 295 U.S. 78, 82–83 (1935).

27       The state court of appeal ruled that this variance was immaterial because petitioner was

28   adequately notified that the prosecution intended to prove that he molested Y. twice during the

time he tutored her.  The court reasoned that any failure to correctly identify the timing of the molestations did not prejudice petitioner, in part because he did not present an alibi defense.

Petitioner argues that the variance was material because he was not given sufficient notice of the state's accusations and therefore had an insufficient opportunity to defend himself. Petitioner was, however, on notice that he needed to defend against charges of molestation during a four-month period.  He knew the dates during which he tutored Y.  The state did not surprise him with any evidence that the molestation occurred during a *different* time period. The evidence simply failed to specify exactly when, during the tutoring period, the molestations took place.  The quality and degree of the variance were small.  Furthermore, petitioner demonstrated no prejudice resulting from this variance.  As exemplified by his closing statement, his defense was primarily that the witnesses against him were not credible because the children were coached and their memories warped by adult pressure.  Such a defense does not depend upon the exact dates of the alleged molestation.  Finally, petitioner does not raise a double-jeopardy issue.

Petitioner also argues that there was insufficient evidence that he committed the crimes during the period  charged.  The situation presented here is not one of insufficient evidence, as that doctrine only covers failures to produce enough evidence of the *essential elements* of the crime.  The specific dates on which petitioner molested Y. was not an essential element of the crime.

For these reasons, the variance was immaterial and the claim fails.

**4.     Computer Evidence.**

**A.     Petitioner's Claim.**

Petitioner claims the court unconstitutionally allowed testimony about his personal computer.  That testimony suggested that he may have visited websites containing child pornography and that he deleted images from his computer on the same day Y.S.'s father confronted him with the first accusation of molestation.  Evidence about the computer was disclosed to petitioner mid-trial, a late disclosure that he claims violated his due-process rights

United States District Court

For the Northern District of California

to discovery, including the right to exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  He also argues that this testimony amounted to bad-character evidence that was barred by the Due Process Clause.  He further suggests that the testimony violated his due-process rights by inviting the jury to speculate as to the content of the websites and to the nature of photographs deleted.  Finally, petitioner claims that opinion testimony about "child sexual predators" was improper because it went to the ultimate issue of guilt.

### B.    Relevant Facts.

On April 2, 2002, counsel made opening arguments and the first trial witness testified. Two days later, the prosecutor told the judge that he wished to call witnesses who would testify about petitioner's computer.  Their testimony was to be based on a previously undisclosed report describing a forensic investigation of the computer.  The testimony was to be that the computer had visited websites with names, such as "Lolita," evocative of child pornography. The prosecutor claimed the testimony also would show that petitioner had deleted images from the computer as the investigation into his crimes began.  One officer's testimony was to describe a purported correlation between using child pornography and molesting children.

Defense counsel asked the court to preclude presentation of the evidence in the prosecution's case-in-chief.  He said that, if he had known about the evidence earlier, he would have investigated the websites, retained an expert to advise him on possible links between pornography and molestation, voir dired the venirepersons about child pornography and perhaps mentioned the evidence and testimony in his opening statement.  The judge told defense counsel that "if we need to take a day or so off so that there can be some actual investigation by you into this whole area, we could do that."  Defense counsel never moved for such a continuance.  Nor was any granted sua sponte.[5]

---

[5] Petitioner does not claim that his trial counsel was ineffective in not making a motion for a continuance.  To the contrary, he states that any criticism of trial counsel for failure to make such a motion is "baseless.  The record establishes that the trial judge . . . would not have granted anything more than a one-day continuance . . .  Once the trial court stated that it would only grant a one-day continuance, there was nothing more than defense counsel could do.  Defense counsel is not required to make futile motions to preserve an issue for appeal."

United States District Court

For the Northern District of California

The next day, Friday, the trial recessed before noon.  On the following Monday, the judge ruled that the evidence would be admitted.  The next day, San Jose Police Officer Steven John McEwan, who specialized in investigating child pornography and sexual assault, testified that someone had used petitioner's computer to visit fourteen websites with pornographic-sounding names.  Officer McEwan did not know whether the websites contained child pornography when petitioner's computer visited them.  When the witness visited the sites the day before his testimony, four of the fourteen contained child pornography.  Officer McEwan also testified that child molesters usually use child pornography.  San Jose Police Officer Greg Korver testified that he had analyzed petitioner's computer and found no pornographic images. He said, however, that about 300 images had been overwritten on the day that petitioner was first confronted with his crimes, making it impossible to view the images.

### C.    Analysis.

A prosecutor violates a defendant's right to due process of law when he or she suppresses evidence material to guilt or to punishment, the evidence is "favorable to [the] accused" and the suppression causes harm to him or her.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963);  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  The evidence must be revealed in time for its effective use at trial.

Viewing the evidence in the light most favorable to the accused, the evidence about petitioner's computer revealed that someone had used it to visit websites with pornographic names and that someone had deleted images from the computer on the day that he was first confronted with his misdeeds.  These facts are not exculpatory.  They are inculpatory and therefore not subject to any well-established disclosure requirement under the Constitution.  *See Gray v. Netherland*, 518 U.S. 152, 168–70 (1996) (holding that defendant had no well-established right to advance notice of inculpatory prosecution evidence); *Weatherford v. Bursey* 429 U.S. 545, 559 (1977) (holding that government was not required to disclose name of witness who was to testify against accused).

United States District Court

For the Northern District of California

1    Petitioner argues that two aspects of the evidence were exculpatory:  evidence that the

2  photographs remaining on petitioner's computer were *not* pornographic and evidence that

3  pornographic websites frequently change their content, meaning that content at the time of trial

4  did not necessarily reflect content at the time they were viewed using petitioner's computer.  It

5  strains credulity to argue that a lack of pornographic photographs has any tendency to disprove

6  guilt of child molestation.  Such information is neutral at best and, at worst, inculpatory because

7  it suggests that whoever deleted images may have been seeking only to eliminate pornographic

8  ones.  The ephemeral nature of websites may well be exculpatory but there is no reasonable

9  probability that, if it had been revealed earlier, the defense would have prevailed.  Petitioner

10  presents no explanation of how he would have used this information, which was revealed at

11  trial, to change his defense.  The late revelation therefore did not prejudice him.

12    Petitioner also claims that the prosecution's failure to disclose the evidence earlier

13  violates the rule of *Wardius v. Oregon*, 412 U.S. 470 (1973).  In *Wardius*, the Supreme Court

14  held that a state law facially violated the Constitution by requiring defendants to disclose, in

15  advance, any alibi defenses and witnesses because there was no reciprocal discovery obligations

16  imposed on the prosecution.  *Wardius*, 412 U.S. at 472.  California's criminal-discovery statutes

17  apparently conform to *Wardius*, by imposing discovery requirements on both sides.  *See* Cal.

18  Penal Code Sections 1054.1 (prosecution) and 1054.3 (defense).  Petitioner alleges, however,

19  that the disclosure was not *actually* reciprocal in the instant case, due to the prosecution's late

20  disclosure.  *Wardius* says nothing about such an actual failure to provide reciprocal discovery,

21  much less requires exclusion of the evidence or any particular length of continuance.  This

22  Court therefore cannot hold that the state courts' decisions to allow the prosecution's evidence

23  and to uphold the verdict were unreasonable applications of *Wardius*.

24    Petitioner next argues that this evidence consisted of inadmissible bad-character

25  evidence that should have been excluded because it was more prejudicial than probative.   He

26  grounds this argument purely on state statutes.  It therefore exposes no federal constitutional

27  infirmity in his conviction and presents no grounds for relief.  In any case, this evidence was not

28  so fundamentally unfair that it violated due process.  *See Jammal v. Van de Kamp*, 926 F.2d

19

918, 919 (9th Cir. 1991) (The issue is "whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.").

Petitioner's argument that the testimony violated his due-process rights by inviting the jury to speculate as to the content of the websites he visited and to the nature of photographs deleted has no grounding in federal constitutional law.  He was not entitled to have the prosecution present only airtight evidence.  The opportunity to cross-examine the witnesses and draw out these weaknesses amply protected him.  The only case that petitioner cites in support of this argument is *Jackson*.  That decision has no bearing here.  It relates, as described above, to the sufficiency of the evidence to support a criminal conviction, not to whether or not a particular piece of evidence may be introduced.  *Jackson*, 443 U.S. 307.[6]

Petitioner also makes no federal-law arguments when he claims that police officers unconstitutionally invaded the province of the jury when they responded to hypothetical questions by stating that, if the facts of the instant case were true, the person committing the acts would be a "child sexual predator."  Petitioner claims that this opinion improperly went to an "ultimate issue" and to petitioner's intent or state of mind.  Petitioner does not cite any authority for the proposition that such testimony violated his constitutional rights.  The Court fails to see any such violation.  For the reasons stated above, this claim fails.

**5.      Sentencing.**

**A.      Petitioner's Claim.**

Petitioner claims that he was sentenced in violation of the constitution on several grounds:  (1) the 90 years to life term violated the Eighth Amendment ban on cruel and unusual punishment, (2) facts found to impose this sentence were found by the judge, not by the jury, and by a quantum of proof admitting reasonable doubt and (3) the sentence was not authorized by statute.

---

[6] Petitioner also cites *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  That decision construed an evidentiary rule applicable only in federal court.  It therefore has no bearing on the constitutional propriety of a state-court ruling.

**United States District Court**
For the Northern District of California

### B.    Relevant Facts.

At sentencing, Judge Joyce Allegro imposed a sentence of fifteen-years-to-life on each of the six counts against petitioner, to run consecutively.  She said she was motivated to impose consecutive sentences because of the vulnerability of his victims, the advantage that he had taken of a position of trust, his lack of remorse and of acceptance of responsibility, an apparent effort to flee before he was taken into custody, his advance planning of the crimes and the likelihood that he would commit more such crimes if ever released from prison.  She discounted the only mitigating factor — his lack of a prior criminal record — by stating that she believed L.C.'s testimony and thought it only a matter of luck that petitioner had not been convicted earlier.

### C.    Analysis.

The state court of appeal rejected petitioner's arguments that his sentence was not authorized by California statues.  This Court is not empowered to review decisions about state law made by the California judges who previously handled this case, unless they were "fundamentally unfair," *Jammal*, 926 F.2d at 919.  The court of appeal's decision was not fundamentally unfair.  The statute provided that a "person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years . . . ."  One of the offenses included in subdivision (c) is a "violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066."  One of the circumstances specified in subdivision (e) is that the "defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim."  Cal. Penal Code Section 667.61(b), (c)(7), (e)(5).  The construction the state court gave to the statute was reasonable, given its text.

Some prison terms are so disproportionately long when compared to the underlying crime that they violate the right to be free from cruel and unusual punishment.  *See* U.S. Const., amend VIII; *Solem v. Helm*, 463 U.S. 277, 284 (1983).  In the context of an action under 28

U.S.C. 2254, there is only one "clearly established" principle applicable to this type of case:  "A gross disproportionality principle is applicable to sentences for terms of years" and is "applicable only in the exceedingly rare and extreme case."  *Lockyer v. Andrade*, 538 U.S. 63, 72–73 (2003) (internal quotation marks omitted).  *Andrade* reversed a Ninth Circuit decision to grant habeas relief to a man imprisoned after conviction on two counts of felony petty theft with a prior conviction.  In light of Andrade's three prior felony burglary convictions, he was sentence to two consecutive sentences of twenty-five years to life.  *Id.* at 68.  In the instant case, petitioner was convicted of six felonies.  Thus, the total number of crimes for which he was sentenced was no more than those factored into Andrade's sentence.  Andrade's crimes arguably were less severe.  They did not involve abuses of trust or particularly vulnerable victims, nor did his crimes involve assaults on another person.  On the other hand, he had a long criminal history, whereas petitioner had none.  Andrade's minimum sentence was 50 years, compared to petitioner's 90 years.  Even if petitioner had been sentenced to a minimum of fifty years, however, he almost certainly would not have lived long enough to see freedom.

The admittedly severe sentence in this case was not much harsher than that approved of by *Andrade*, if it was harsher at all.  We cannot say that upholding petitioner's punishment was an unreasonable application of clearly established federal law, as determined by the Supreme Court.  This claim therefore fails.

If a person invokes his or her right to jury trial, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Petitioner argues that the judge found facts that increased his maximum sentence beyond that authorized by the jury's verdict alone.  He is wrong.  By petitioner's own admission, the jury verdict authorized a maximum sentence of life in prison.  There is no way that a sentence could be any longer.  The judge's findings therefore could not have increased impermissibly petitioner's *maximum* sentence, the only sentencing length that is governed by *Apprendi*.  Petitioner argues only that the judge's findings affected the *minimum* sentence, raising it to

United States District Court

For the Northern District of California

ninety years.  There is considerable support for the view that the Sixth Amendment requires that increases in the mandatory minimum sentence may only be based upon a jury verdict of beyond a reasonable doubt.  *See, e.g.*, *Harris v. United States*, 536 U.S. 545, 579 (2002) (Thomas, J., dissenting) (joined by three Justices) ("*Apprendi* concerned a fact that increased the penalty for a crime beyond the prescribed statutory maximum, but the principles upon which it relied apply with equal force to those facts that expose the defendant to a higher mandatory minimum . . . . Whether one raises the floor or raises the ceiling it is impossible to dispute that the defendant is exposed to greater punishment than is otherwise prescribed.").  That view is not, however, clearly established constitutional law, as determined by the Supreme Court.  *See Harris v. United States*, 536 U.S. 545, 557 (2002) (plurality opinion) (holding that jury verdict beyond reasonable doubt not needed for increase in mandatory minimum sentence); *United States v. Dare*, 425 F.3d 634, 638–43 (9th Cir. 2005) (holding that Supreme Court does not require that facts that increase mandatory minimum be found beyond reasonable doubt by jury).  This Court therefore must apply *Dare* and the plurality holding of *Harris* to the instant case.  If the judge's findings did increase petitioner's minimum sentence, there was no error cognizable on federal habeas review.

For the reasons stated above, the claim that the sentence was unconstitutionally long and imposed in violation of the right to trial by jury is meritless.[7]

### CONCLUSION

For the reasons stated, Mr. Hassinger's request for a writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 7, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[7] Because there was no constitutional violation at petitioner's trial, his claim of cumulative prejudice necessarily fails.  There can be no cumulative prejudice without error.  In addition, trial counsel adequately preserved all of the sentencing arguments presented in the petition.  There is therefore no cause to find ineffective assistance of counsel on the sentencing issue.